**PETERS LAW GROUP, APC**
**Attorneys at Law**
James J. Peters, SBN 227842
Sara R. Peters, SBN 236904
P.O. Box 7797
Ventura, CA 93006-7797

Tel: (805) 275-4501
Fax: (866) 483-3326

Attorneys for Plaintiff
ERIK PETERSEN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK PETERSEN, | CASE NO.: 10-CV-02493-BZ |
| Plaintiff, | |
| vs. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| AGT CRUNCH ACQUISITION, LLC, *et al.*, | Date of Hearing: August 25, 2011 |
| Defendants. | Time of Hearing: 2:00 p.m. |
| | Courtroom: 2 |

**INTRODUCTION**

Plaintiff, Erik Petersen, ("Plaintiff") hereby opposes Defendant's Motion for Summary Judgment in this case.

**STATEMENT OF FACTS**

Except to the extent it is contradicted herein, Plaintiff generally adopts Defendant's Statement of Facts in order to avoid needless repetition.

///

## OBJECTIONS TO MOVANT'S EVIDENCE

A trial court may consider only admissible evidence in ruling on a motion for summary judgment. <u>Orr v. Bank of Am., NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002). Plaintiff objects to the following evidence presented by Defendants in support of their motion for summary judgment.

### I. DECLARATION OF DAN MANAGAN

A. Paragraph 15: Hearsay

In paragraph 15 of Mr. Managan's declaration, he recites several facts that Chris Adams allegedly "relayed" to him prior to leaving the company. The testimony contained in this paragraph is offered for the truth of the matter asserted and therefore inadmissible hearsay not properly considered in ruling on this motion. <u>Self-Insurance Inst. Of Am., Inc. v. Software & Info. Indus. Ass'n</u>, 208 F.Supp.2d 1058, 1067 (CD Cal 2000); Fed.R.Evid. § 801(c).

B. Paragraph 16: Hearsay

Same objection as to paragraph 15.

### II. EXHIBITS B-O

It is a basic tenant of federal law that unauthenticated documents cannot be considered in a motion for summary judgment. See e.g. <u>Orr</u> at 773; <u>Cristobal v. Siegel</u> 26 F.3d 1488, 1494 (9th Cir. 1994). Plaintiff objects to Exhibits B-O attached to Defendant's motion for summary judgment on the grounds that these documents have not been authenticated by Defendants and satisfy no exception to Federal Rule of Evidence 901(a).

### III. EXHIBIT P

A deposition or an extract therefrom must include a signed certification from the court reporter to be authenticated and therefore admissible. <u>Pavone v. Citicorp Credit Servs., Inc.</u>, 60 F.Supp.2d 1040, 1045 (S.D. Cal. 1997). Defendants have not submitted any certification by the court reporter of Plaintiff's deposition, nor is there any affidavit from Defendants' counsel authenticating the deposition excerpts in any other manner. Therefore, Plaintiff's deposition testimony should not be considered in deciding this motion.

///

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**CONCLUSION**

As outlined above, it is Plaintiff's position that almost all of the evidence Defendants have produced in support of their motion for summary judgment is inadmissible and their motion should be denied because without any of this evidence, they have failed to meet their initial burden under FRCP 56. However, if the Court finds that this evidence *is* admissible, Plaintiff otherwise responds to Defendants' motion below.

## ARGUMENT

### I. LEGAL STANDARD FOR RULING ON SUMMARY JUDGMENT MOTION

A motion for summary judgment must be denied unless the moving party can show that there is no genuine issue of material fact concerning the plaintiff's claims. FRCP § 56(c); *Lindahl v. Air France*, 930 F.2d 1434, 1436 (9th Cir. 1991). On summary judgment, the court views all evidence in the light most favorable to the non-moving party and resolves all inferences in their favor. *Warren v. City of Carlsbad*, 58 F.3d 443 (9th Cir. 1995). The court must *not*, however, make credibility determinations or weigh the evidence presented. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 254 (1986).

The Ninth Circuit has recognizes an especially "high standard" for granting summary judgment in employment law cases. *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). In *Schnidrig*, the Court observed that a plaintiff must present "very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a 'searching inquiry'—one that is most appropriately conducted by the fact finder, upon a full record." *Id.* (citations omitted.)

### II. PLAINTIFF'S FMLA AND CFRA CLAIMS

A. *Failure to Reinstate Plaintiff to his Previous Position after Leave*

Plaintiff's First and Fourth causes of action allege that Defendants failed to reinstate him to the same or an equivalent position upon his return from leave as the position he had held prior to leave, under the CFRA and FMLA respectively.

The FMLA states that "[o]n return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced". 29 CFR § 825.214. If

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1  for some legitimate reason the employer is unable to return the employee to the same position, the
2  employee must be placed in an "equivalent position". *Id*. An "equivalent position" is one which
3  has "substantially equivalent skill, effort, responsibility, and authority." 29 CFR 825.215(a). The
4  CFRA has the same requirements as the FMLA in these respects. Cal. Gov. § 12945.2(a).

5        Defendant admits in their Motion for Summary Judgment that although when Plaintiff
6  returned from leave "he was still a Membership Director with the same benefits and pay,"
7  Plaintiff "did not have managerial duties any longer". <u>Def. MSJ</u>, p.15, lines 19-20. As a result of
8  Defendants' removal of "managerial duties" from Plaintiff's position, he was not returned to a
9  position with "equivalent…responsibility, and authority" as required by the FMLA and CFRA.

10        To be equivalent, a new position must have similar opportunities for promotion and salary
11  increase. <u>Darby v. Bratch</u>, 287 F.3d 673, 679 (8th Cir. 2002). Clearly a management employee
12  has many more opportunities for promotion and salary increases than an employee who does not
13  have managerial duties.

14        Before Plaintiff went on medical leave, he had been performing managerial duties as
15  Membership Director. <u>Plaintiff's Declaration</u> ¶¶ 7-8. Defendants contend that in June Chris
16  Adams told Plaintiff that there would be two Membership Directors at the Alhambra location,
17  Plaintiff and Brandon Barnard. <u>Def. MSJ</u>, p.8, lines 13-16. They also contend that at this time,
18  Plaintiff was told that Mr. Barnard would be "the membership director who the sales team would
19  go to as their supervising manager". *Id*. at lines 15-17. However, none of this is true. Plaintiff
20  was not told any of this until after he returned from his family leave in September. <u>Plaintiff's
21  Declaration</u> ¶¶ 9-11.

22  B. *<u>Wrongful Termination of Plaintiff's Employment for Taking a Protected Leave</u>*

23        Plaintiff's Second and Sixth causes of action allege that Defendants terminated his
24  employment in retaliation for taking a leave protected by both the CFRA and FMLA. Both the
25  CFRA and FMLA prohibit employers from terminating employees because they took a protected
26  leave. 29 CFR § 825.220(c); <u>Liu v. Amway Corp.</u> 347 F.3d 1125, 1135-1136 (9th Cir. 2003). To
27  prevail on such a claim, an employee "need only prove by a preponderance of the evidence
28  that…taking FMLA protected leave constituted a negative factor in the decision to terminate."

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

*Cavanaugh v. Southern California Permanente Med.*, 583 F.Supp.2d 1109, 1125 (C.D. Cal. 2008) [citing *Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112, 1125(9th Cir. 2001)].

Therefore, to survive summary judgment on these claims, Plaintiff merely has to demonstrate a triable issue of fact as to why Defendant terminated his employment. In other words, if based on the evidence presented a "jury could reasonably find" that Mr. Petersen was terminated, at least in part, because of his protected leave, Defendants' motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 252 (1986).

It must be recognized that "many employment cases present issues of intent, and motive…. Such cases…are rarely appropriate for disposition on summary judgment." *Nazir v. United Airlines, Inc.*, 178 Cal.App.4th 243, 286 (2009). This is clearly one of those cases, because Plaintiff's wrongful termination claims hinge *solely* on a question of intent, which is something for a jury to decide.

"If a plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed." *Washington v. Garrett* 10 F.3d 1421, 1433 (9th Cir. 1993).

1. No Evidentiary Support for Alleged Reasons for Termination

The main question of fact in this case is why Defendants terminated Plaintiff. However, Defendants have actually presented no evidence showing *why* they ultimately terminated Plaintiff. Defendants allege that Plaintiff was terminated "because of documented instances of poor work performance, tardiness, and for violations of company policy while he was on child care leave," but there is no legitimate, admissible evidence to support that this was the reason the termination decision was made. Def. MSJ p. 7, lines 23-25.

Defendants cite ¶ 20 of the Managan Declaration as evidence of why exactly Plaintiff was fired. However, there *is* no 20th paragraph to this declaration. It is unclear whether this is an attempt to mislead the Court or a typographical error. However, it must be pointed out that *nowhere* in *either* of the declarations submitted by Defendants is there any actual assertion as to why exactly Plaintiff's employment was terminated. Defendants present evidence that may suggest poor performance and misconduct during the months leading up to Plaintiff's termination,

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**1** but at no point is there proof presented indicating what the ultimate motivation was.

**2** Because Defendants have not submitted any admissible evidence whatsoever as to *why* Plaintiff was actually terminated or even *who* made that decision, Defendants have failed to meet even their initial burden in presenting their motion for summary judgment.

2. <u>Defendants' Stated Reasons for Termination are Not Supported by Evidence</u>

A wrongful termination plaintiff creates a triable issue of fact when based on the evidence presented a jury could find that either the employer's stated reasons for termination are factually baseless or those reasons were insufficient to reasonably motivate the decision to terminate. <u>Koski v. Standex Int'l Corp.</u>, 307 F.3d 672, 677 (7th Cir. 2002).

Defendants allege in their motion that Plaintiff was terminated "because of documented instances of poor work performance, tardiness, and for violations of company policy while he was on child care leave". <u>Def. MSJ</u> p.7, lines 23-25. Defendants also allege elsewhere that Plaintiff was terminated because he was "excessively absent" and "had three unexcused absences in his first four days back on the job". <u>Def. MSJ</u> p.16, lines 5-7; 24-25.

Each of these justifications either have no factual basis or simply could not reasonably have motivated Defendants to terminate Plaintiff's employment.

*a. "Documented Instances of Poor Work Performance"*

Defendants now allege that Mr. Petersen was terminated in part because of "documented instances of poor work performance." *Id*. However, the only "documented" mention of such issues is an email from Chris Adams sent July 6, 2009 regarding Plaintiff's performance. <u>Def. MSJ</u> EXHIBIT C. As mentioned above, this document is not even authenticated, but even if it were admissible there are other issues with Defendants' use of this document.

Prior to September 2009, Plaintiff served as Membership Director in the Alhambra club for just three weeks. <u>Plaintiff's Declaration</u> ¶ 6. As Membership Director, it was his job to manage the location's sales force, as well as secure his own sales. <u>Plaintiff's Declaration</u> ¶ 7. The first couple of weeks were spent acclimating to his new role in the club and it takes time to develop sales leads. <u>Plaintiff's Declaration</u> ¶ 8. After really only spending a week or two in total trying to generate sales, it would have been impossible for Defendants to form an opinion of his

- 6 -

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

performance in such a short period.

Even if there had been enough time to evaluate his performance during the short time he was in the Membership Director position, no issues with Plaintiff's performance were *ever* brought to his attention by anyone and Defendants have not presented any evidence that they were. Plaintiff's Declaration ¶ 9. The only shred of evidence that makes any mention of performance issues is EXHIBIT C to Defendants' motion. Even if this document were properly authenticated and admissible, Chris Adams had previously demonstrated an ulterior motive for writing such an email.

Plaintiff's son was born on June 1, 2009 and Plaintiff took a brief, one-week leave to care for his wife and son. Plaintiff's Declaration ¶ 2. Upon returning to work, Plaintiff learned that the General Manager of his location had quit during the week he was out and an outside person had already been hired to take her place. Plaintiff's Declaration ¶ 3. At that time, Plaintiff was of the understanding that he was next in line to be promoted to General Manager. Plaintiff's Declaration ¶ 4. When Plaintiff confronted Mr. Adams about the situation, Mr. Adams told Plaintiff that he was not promoted because he now had a small child at home and Mr. Adams believed that this would make him less dedicated to his job. Plaintiff's Declaration ¶ 5.

Therefore, even if EXHIBIT C is admissible as evidence that Plaintiff was a poor performer, Mr. Adams' ulterior motive (his animosity towards Plaintiff based on his perception that Plaintiff was less dedicated to his job after the birth of his child) discounts any weight given to the document as evidence of poor performance.

Finally, this email was sent almost *immediately* after Plaintiff requested his leave of absence. He initially requested his leave on the morning of July 6 and Mr. Adams suddenly decided he had a problem with Plaintiff's performance later that same day. Plaintiff's Declaration ¶ 12. A jury could easily decide that this one mention of poor performance was motivated by Plaintiff's request for a protected leave, both creating a triable issue of material fact and supporting Plaintiff's claims in demonstrating a bias against Plaintiff's protected leave.

For Defendants to now assert that Plaintiff's "ineptitude at closing sales was readily apparent" or that he was "a complete failure as a salesperson" based on virtually no evidence at

- 7 -
**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

all is disingenuous at best.  Def. MSJ, p.8, line 22; p.13, lines 4-5.

      b.   *"Violations of Company Policy While on Child Care Leave"*

Defendants assert that Plaintiff "frequently and flagrantly violated the terms of his leave" because he "failed to return company property" and "continually attempted to pursue sales leads while on family leave". Def. MSJ p.9, lines 1-4.

Regarding his alleged failure to return company property, the one and only time Plaintiff was asked to return any company property was in the July 14 email attached as EXHIBIT G to Defendant's motion. Plaintiff's Declaration ¶¶ 13-14. Defendants have not produced any proof of any corporate policy requiring return of equipment during a family leave. Indeed, Defendants did attach their official leave policy as EXHIBIT B to their motion and it makes no mention of returning company equipment. Upon receiving the July 14 email, Plaintiff promptly returned all company equipment on July 17, as instructed. Plaintiff's Declaration ¶ 15. Plaintiff never "failed" to return company equipment, so citing this as a reason for termination is clearly pretextual.

Regarding Defendants' allegations that Plaintiff "violated company policy prohibiting performance of any work related activities while out on a protected leave," such a policy simply does not exist. Defendants cite EXHIBIT B of their motion as evidence that this was a "violation," but the only language they point to simply prohibits employees from "taking on *another* job while on family/medical leave". Def. MSJ p.7, lines 8-18 [emphasis added].

When he started his family leave in July 2009, Plaintiff had been working on a lucrative deal with CitiApartments to sell a large number of memberships to its residents. Plaintiff's Declaration ¶ 16. After starting his leave, he called his contact at CitiApartments *once* to let them know he was on a leave of absence and let them know who they should contact in his absence. Plaintiff's Declaration ¶ 17. This was the only contact Plaintiff had with any customers during his family leave. Plaintiff's Declaration ¶ 19.

On July 20, 2009, Plaintiff responded to an email from Defendant's director of corporate sales outlining changes to how salespeople go about getting credit for their corporate sales. Def. MSJ EXHIBIT F; Plaintiff's Declaration ¶ 18. For example, there was now a "lead form" that

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

had to be completed in order to receive credit. <u>Id</u>. To ensure he received credit for the CitiApartments account he had brought in, Plaintiff responded to this email with a completed lead form. <u>Id</u>. Except for his one contact with CitiApartments and one response to an internal email, Plaintiff was not otherwise pursuing sales while on my family leave. <u>Plaintiff's Declaration</u> ¶ 19.

However, what is most important regarding this situation is the fact that Mr. Petersen was not disciplined in any way for any of this. <u>Plaintiff's Declaration</u> ¶ 20. He did not receive a formal warning, he was not terminated, and he was not threatened with termination. <u>Plaintiff's Declaration</u> ¶ 21. It was never brought up again after July 21, 2009, which was almost two months before his termination, and until this litigation it was never mentioned as a justification for terminating Plaintiff's employment. <u>Id</u>.

c. "Excessively Absent"

It is unclear to what Defendants are referring when they allege that a reason for Plaintiff's termination was his being "excessively absent". Such allegations are actually consistent with Plaintiff's allegations that he was terminated for taking a protected leave of absence just before his termination. Plaintiff had missed just two days of work after returning from his leave of absence, which is hardly "excessive". Therefore, any reference to "excessive" absences actually *supports* Plaintiff's case.

Even if Defendants are only referring to these two days he was absent, it seems that a couple days off would really only have been considered an issue by Defendants if the fact that he had just taken a two-month protected leave was also illegally considered. Taking into account protected leave as well as unprotected leave in terminating an employee due to "excessive absences" creates a triable issue of fact as to whether the protected leave was a "negative factor" in termination of employment. <u>Long v. Teachers' Retirement System of State of Illinois</u>, 566 F.Supp.2d 851 (C.D. Ill. 2008).

d. "Three Absences"

Defendants refer to Plaintiff as having had "three unexcused absences in his first four days back" from protected leave, which they state was their "limit of tolerance" and the impetus for Plaintiff's termination. <u>Def. MSJ</u> p.16, lines 8-9; 24-25.

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

The first "absence" Defendants mention, Monday, September 7, 2009, was the day Plaintiff was scheduled to return to work from his leave, but he realized that this was actually Labor Day. Plaintiff's Declaration ¶ 22. Plaintiff had this day off each and every year when working for Defendants, so to account for the usual holiday he instead returned the next day, September 8. *Id*. Defendants never told him this was a problem, nor did they warn him, chastise him about it after he returned or even mention it to him in any way whatsoever. Plaintiff's Declaration ¶ 23.

The first "real" absence at issue was on September 10, 2009. Plaintiff's three-month-old son had fallen ill and Plaintiff was staying home to care for him. Plaintiff's Declaration ¶ 25. Further, Plaintiff's customary start time when working for Defendants had been 12:00 p.m., not 11:00 a.m. when Defendants contend he was supposed to start, so he notified Defendants before his shift was supposed to begin, just as any employee would. *Id*.

The third absence, on September 11, 2009, was taken by Plaintiff because of distress he was feeling over work, which he complained about in an email to Defendants on the evening of September 10, as explained in more detail later in this brief. Plaintiff's Declaration ¶ 27. He was still awaiting an answer to this email when he was suddenly notified of his termination later that day. Plaintiff's Declaration ¶ 31.

Plaintiff not only explained each of these absences at the time they occurred, but also Defendants never told Plaintiff that any of them were unexcused or that his unplanned absences were a problem. Plaintiff's Declaration ¶¶ 26,30. Nobody asked Plaintiff for clarification as to why he was taking these days off or warned him that there was anything wrong with doing so. *Id*.

Although there was apparently a schedule issued for all sales personnel via email, including Plaintiff, the day he returned from leave, Plaintiff does not recall receiving it. Plaintiff's Declaration ¶ 32. Prior to his family leave, he was not included on the schedule (which *he* prepared)—only members of his sales team were listed. Plaintiff's Declaration ¶ 33. Therefore, even if Plaintiff *did* receive the emailed schedule, he likely did not even open it because his schedule had never been included on it. *Id*.

As a result, Plaintiff continued to work his regular schedule starting at 12:00 p.m. and

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

never knew he was ever expected to come in any earlier than that. <u>Id</u>. Even at the time of his termination, Plaintiff had no idea he had been scheduled to go into work at 11:00 a.m. <u>Plaintiff's Declaration</u> ¶ 34.

3. <u>Defendants' Stated Reasons for Termination are Pretextual</u>

A plaintiff in a wrongful termination case can also demonstrate a triable issue of fact by calling into question the validity of the employer's stated reasons for termination and showing that a jury could find that the illegal reasons suggested by the Plaintiff may have been the real motivation. <u>Zaccagnini v. Chas. Levy Circulating Co.</u>, 338 F.3d 672, 679 (7th Cir. 2003).

*a. No Progressive Discipline*

In Defendants' EXHIBIT C, Chris Adams asks Danny Granados for assistance with "corrective action" for Plaintiff. He suggests "a PIP with minimum expectations and a follow up check in one week. Failure to meet minimum expectations would result in separation."

No performance improvement plan ("PIP") was ever implemented, but this clearly indicates an acknowledgment that progressive discipline (as opposed to termination) was contemplated by Defendants as appropriate before Plaintiff took a leave of absence, but apparently they did not consider this option after his protected leave.

Additionally, in an email sent less than twenty-four hours before Plaintiff's termination, his supervisor, Tyler Hansen, asked HR for permission to issue Plaintiff a "final written warning for attendance". *See* Exhibit "1". Instead of following through with that plan, Defendants abruptly terminated Plaintiff the very next day.

During Plaintiff's employment with Defendants, as a management employee he of course had occasion to discipline his subordinates. <u>Plaintiff's Declaration</u> ¶ 35. In dealing with discipline, Human Resources, including Danny Granados, instructed Plaintiff to always use progressive discipline when disciplining employees. <u>Id</u>. This included giving a verbal warning, issuing a written warning and providing a final warning in virtually all circumstances. <u>Id</u>. Defendants' failure to follow their own stated policies by not using progressive discipline when disciplining Plaintiff calls into question the real motivation for their actions and creates a triable issue of fact.

- 11 -

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

### b. Temporal Proximity

Significant temporal proximity between the conclusion of a plaintiff's FMLA leave and an adverse employment action can establish a triable issue of fact as to why an employer terminated an employee. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). In this case, Plaintiff returned to work just three days before Defendants terminated his employment, which is certainly soon enough to arouse suspicion and create a triable issue of fact.

### c. No Discussions with Plaintiff

Despite the alleged seriousness of Plaintiff's "misconduct" and poor performance, nobody from the company ever warned him he was doing anything wrong, that his job was at all in danger, or that he should change anything about what he was doing. One would think that if Defendants really wanted Plaintiff to improve his performance and thought he was doing such a bad job, they would have at least told *him* about it.

### d. Chris Adams' Ulterior Motive

As discussed above, Chris Adams told Plaintiff that he was not promoted to General Manager because he believed Plaintiff would be less dedicated to working now that he had a young child at home. If Mr. Adams was biased against Plaintiff for an anticipated future lack of dedication to his job, a jury could easily find that Plaintiff's two-month protected family leave was a motivating factor in the decision to terminate his employment based on the lack of dedication Mr. Adams believed that leave demonstrated.

### e. Human Resources' Disparaging Comments Regarding Plaintiff's Leave

Attached as Exhibit "2" is an email exchange that flows from Defendant's EXHIBIT C. In response to Chris Adams' request for information on how to put Plaintiff on a PIP, Danny Granados, HR Manager responded "I knew there was a reason Erik wanted to take a leave all of the sudden" and VP of HR then stating "I was expecting to hear about it". *Id*.

The fact that HR seems to have been of the opinion that Plaintiff's family leave was not legitimate and somehow an example of poor performance or deception alone suggests there was animosity towards Plaintiff for requesting and taking a protected leave of absence.

///

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

####### *f. Dan Managan's Concerns Regarding Disparate Treatment*

One of the most basic ways of proving discrimination or retaliation in an employment case is demonstrating that employees in similar positions who did not take protected action were treated differently than the plaintiff.

In the attached Exhibit "3", Dan Managan states in an email sent on September 11, 2009 at 12:06 p.m., just minutes after the decision to terminate Plaintiff was made, that he had "called Chris [Adams] out on the fact that he hasn't fired any other under-performers. I would just make sure he is held accountable for the same with all other under-performing advisors."

The fact that Defendant's own management was calling into question the legitimacy of Plaintiff's termination (essentially suggesting there would be a triable issue of fact) certainly suggests that there are two sides to this story that a jury will have to hear and decide which is true.

### C. *Wrongful Termination of Plaintiff's Employment in Retaliation for FMLA/CFRA Complaints*

Plaintiff's Third and Fifth causes of action allege retaliation against him for complaining about FMLA/CFRA violations, which is prohibited by both statutes pursuant to 29 USC § 2615 and California Government Code § 12940(h), respectively.

Less than twenty-four hours before his employment was terminated by Defendants, Plaintiff sent Daniel Espino, Vice President of Human Resources, the email attached as Exhibit "4". Plaintiff's Declaration ¶ 27. This email complains about "continuing issues related to my return from approved Family Leave". *Id*. The email goes on to complain about not being reinstated to the same position as when he left on leave, which as explained earlier in this brief is illegal under both federal and California law. *Id*. These complaints about FMLA/CFRA violations were protected activities under both statutes.

For the same reasons outlined above why the reasons given by Defendants for termination do not make sense and could be seen as pretextual by a jury, Defendants' motion for summary judgment must be denied with respect to these claims.

Additionally, the fact that this complaint was sent to Daniel Espino, the same individual who signed Plaintiff's termination letter less than twenty-four hours before he was terminated, clearly creates a triable issue of fact as to his motivations. This connection is made even stronger

**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

by the contents of Exhibit "1", an email that reflects Tyler Hansen and Danny Granados' intention to issue Plaintiff a "final written warning" for attendance just hours before Plaintiff made his protected complaints.

Clearly a jury could easily deduce that Defendants changed their minds about progressive discipline and decided to skip directly to terminating Plaintiff once he registered his protected complaint with Mr. Espino and Mr. Granados.

### III. Wrongful Termination Common Law Claims

Defendants are correct in their assertion that if there are no violations of the underlying statutes that implicate public policy, there is no viable wrongful termination claim. Def. MSJ p.19, lines 24-29. However, the opposite is also true and because, as outlined above, there *are* underlying FMLA and CFRA claims, Plaintiff's tortious wrongful termination claims must also be allowed to proceed.

### IV. Claim for Waiting Time Penalties

California Labor Code § 201(a) requires an employer who terminates an employee to pay that employee all earned compensation *immediately* upon termination. If those wages are not paid immediately, a penalty of one day's wages is awarded each day until paid, for up to thirty days. Cal. Labor Code § 203. These penalties accrue *daily* until the wages are paid in full, not just on days the employee might have worked but also on non-workdays, including weekends. *Mamika v. Barca*, 68 Cal.App.4th 487, 493 (1998).

Defendants terminated Plaintiff's employment on Friday, September 11, 2009. Defendants did not make Plaintiff's final paycheck available to him until the afternoon of Tuesday, September 15, 2009. Although in the interim Defendants did pay him for his scheduled workdays on Saturday, September 12 and Monday, September 14, he was not paid for Friday, September 11 or Sunday, September 13, which he should have been under Labor Code § 203. *See* Exhibit "5".

Therefore, Plaintiff is still owed two days of wages in the form of "waiting time" penalties under Labor Code § 203 for Friday, September 11 and Sunday, September 13.

///

## CONCLUSION

For the reasons outlined above, Plaintiff Erik Petersen respectfully requests that the Court deny Defendant's Motion for Summary Judgment or, in the alternative, for Summary Adjudication.

Respectfully Submitted,

DATED: August 4, 2011  **PETERS LAW GROUP, APC**

By: /s/ James J. Peters
JAMES J. PETERS
Attorneys for Plaintiff
ERIK PETERSEN

- 15 -
**POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**